ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7289
   FAX: (415) 436-7234
   Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>MARCO TULIO DIAZ-CRUZ,<br><br>'<br><br>        Defendant. | CASE NO. 3:23- NO. 00430-WHA<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:    July 10, 2024<br>Time:    2:00 p.m.<br>Court:   Hon. William Alsup |

## I.    OVERVIEW

Marco Tulio Diaz Cruz was arrested during a law enforcement operation in the early morning of November 6, 2023, near the area of Eddy and Polk Streets, in the Tenderloin.  At the time of his arrest, Mr. Diaz Cruz was wearing a dark grey jacket, dark pants, a black beanie, black shoes, and a black surgical mask. Mr. Diaz-Cruz was seen engaging in multiple hand-to-hand drug transactions prior to his arrest.  At approximately 5:34 am. he appeared to sell drugs to a street buyer and received cash in

1

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

exchange. He then engaged in other hand to-hand drug transactions at approximately 5:36 a.m. and 5:38 a.m. PSR at ¶¶7-8. He was arrested shortly thereafter. At the time of his arrest, Mr. Diaz-Cruz possessed the following illegal drugs: Fentanyl weighing 4.7 grams (in a plastic bag); Cocaine base weighing 19.2 grams (in a plastic bag); Methamphetamine weighing 5.7 grams (in a plastic bag); and Cocaine HCL weighing 5.1 grams (in a plastic bag). [1] PSR at¶ 9. He also possessed a cell phone that he used in connection with his drug dealing activities and $462.00 in US Currency that were some of the proceeds of his drug dealing activities. In his open plea, Mr. Diaz-Cruz admitted to possessing with the intent to distribute fentanyl on November 6, 2023. In addition, Mr. Diaz-Cruz is responsible for all of the drugs seized on his person at the time of his arrest. PSR at ¶11; U.S.S.G. §1B1.3. Mr. Diaz-Cruz has been in federal custody since his arrest on November 6, 2023.[2]

The United States, in the exercise of its prosecutorial discretion, stands by its recommendation of a time served sentence plus one business day with the caveat that Defendant needs to reaffirm that he is taking responsibility for his criminal conduct.[3] Assuming that he does so, a Release Order should also be fashioned that will allow the U.S. Marshall to take custody of the Defendant at the end of his sentence so that he is released from the Federal Building in San Francisco. The United States also seeks the forfeiture of Mr. Diaz-Cruz's phone and the drug proceeds ($462.00) seized during his arrest. Finally,

[1] There are TruNarc photos in this case that confirm the weight and the type of drug: Presumptively fentanyl, methamphetamine, and cocaine and cocaine base. (See Docket 1, Filed Complaint at pg. 6-7 including TruNarc photos).

[2] When the United States Attorney's Office initially evaluated this case for prosecution, the Office determined that an appropriate resolution involved a "time-served" sentence with a three year term of supervised release to follow Mr. Diaz-Cruz's release. More specifically, the Office conveyed the following plea proposal to Mr. Diaz-Cruz through his attorney: a C Plea with a time served plus one day sentencing recommendation from the government if accepted by the Court if he stayed in custody, entered a guilty plea and accepted full responsibility for his misconduct. The Court indicated it would reject the C Plea, but the defendant has remained in custody. With his open plea, Mr. Diaz-Cruz seemed to be accepting full responsibility for his misconduct.

[3] Defense counsel has now filed with probation an objection to including the other drugs possessed by the defendant at the time of his arrest in the Guideline calculation. He seeks to have them tested by a laboratory and he also asserts that his client can only be sentenced on the fentanyl he possessed based on his open plea. This raises a question as to the defendant's sincerity in taking full responsibility for his actions. In addition to the fentanyl, he also possessed with the intent to distribute cocaine, cocaine base and most importantly, methamphetamine – which if tested could be "actual" and would raise the Guidelines ever higher than originally contemplated by the parties.

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

the United States requests the imposition of the mandatory and special conditions of Supervised Release attached as Appendix A to this memorandum.

The United States Attorney's Office is committed to prosecuting street level drug dealers because of the overwhelming harm being caused to the people who live in City of San Francisco, especially in the Tenderloin Neighborhood. There were over 806 fentanyl deaths in San Francisco last year.  For Americans aged 18-45, the leading cause of death is fentanyl overdose. The addictive drug is responsible for nearly 70% of the United States' 107,000+ drug overdose deaths in the past year and is 50 times stronger than heroin and 100 times stronger than morphine.[4]  Federal law enforcement agents and prosecutors are doing our part to help this under siege community.  In order to effectively prosecute street level drug dealers, and deter these offenders from returning to the Tenderloin to mitigate the problem described, the United States Attorney's Office has, in appropriate cases, recommended time served sentences that result in the defendant's immediate conviction, and removal from the Tenderloin with a three year term of supervised release.  The defendant's case appropriately falls within that category.  Although this recommendation is a variance from the Guidelines, the Presentence Report provides the Court with more than enough information justifying a downward variance even though there are concerns about the defendant's prior immigration history and his inability to follow the law and stay out of the country after his prior deportations.

### Mr. Diaz-Cruz has Aggravating and Mitigating Circumstances that can be Considered

The very thorough Presentence Report in this case provides the Court with the information needed to vary downward from the Guidelines and from Probation's recommended sentence of 12 months plus one day, (that in effect would result in a 10-month sentence).  By the time he is sentenced, Mr. Diaz-Cruz will have spent approximately 8 months in custody. If the Court adopts the government's suggested sentence, he will however be released directly from the Marshal (or the BOP) into ICE custody, and he will almost certainly be deported thereafter.

The defendant is a citizen of Honduras, and he has no legal status in this country. He has been illegally living in the United States since 2012. He was deported multiple times (PSR at Pars. 36-43) and

---

[4] https://www.getsmartaboutdrugs.gov/media/dea-administrator-record-fentanyl-overdose-deaths

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

has been convicted of drug dealing in Colorado in 2015, along with various violations of his probation through 2019. *See* PSR at Pars. 28-30.[5] He also has a conviction for violating 8 U.S.C. 1326 in 2017 resulting in a conviction and sentence of 6 months in the BOP on March 15, 2018. *See* PSR at Pars 32. With his federal drug conviction here, he will now be an aggravated drug felon. He will be permanently prohibited from returning to the United States. If he comes back, he will be a repeat §1326 offender and together with his aggravated felony here, he will be subject to significant prison time and additional charges on top of his sentence here.

That said, he was a street dealer and not a drug kingpin or even a mid-level supplier. From the PSR, he had some work history, but it was erratic. *See* PSR at ¶ 59. "He has prior experience working in a restaurant, house painting, carpentry assistance, welding, and mason's assistance." *See* PSR, Sentencing Recommendation at page 2. His background and his attempt to find a better life for himself and to otherwise help his family while not an excuse for dealing fentanyl, does provide some context for why he may have chosen to do so. As the Probation officer also noted: "The most redeeming part of Mr. Cruz's history is that he had to stop going to school at an early age so he could work and provide financially for his family." *See* PSR, Sentencing Recommendation at page 2.

## II. APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government agrees with the Sentencing Guideline Calculations in the PSR.

Base Offense Level, U.S.S.G. §2D1.1:                                                            16

Converted Drug weight of more than 20 KGs but less than 40 KGs (Approximately 28 KGs, comprised of 4.7 grams of fentanyl, 19.2 grams of cocaine base and 5.1 grams of cocaine HCL (all calculated as cocaine HCL) and 5.7 grams of methamphetamine).[6]

a.    Acceptance of Responsibility, U.S.S.G. §3E1.1:                          - 3

b.    Zero Point Offender Reduction                                                    N/A

c.    Adjusted Offense Level:                                                                  13

d.    Guidelines Range 18-24 months (based on Criminal History Category III)

---

[5] We disagree with probation's counting of his Marijuana possession in 2017 but it does not change his criminal History Category; it remains a level III. See PSR at Par31.

[6] *See* Addendum – Converted Drug Weight Table.

4

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

## III.    SENTENCING RECOMMENDATION

If the Defendant accepts full responsibility for his actions, the United States continues to recommend a below-Guidelines sentence—accounting for the time served plus one court day followed by a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. While this recommendation does not include a separate additional prison sentence. He has been in custody since he was arrested on November 6, 2023. By expanding the number and types of dealers we are prosecuting in the Tenderloin, we are effectively signaling to the community that the United States is working to remove these dealers from the Tenderloin, and where appropriate, to send them home or at least keep them from returning to the Tenderloin. In addition, given the Defendants prior 1326 conviction, he is prohibited from returning to the United States at any time. Coming to U.S. again would be a separate violation of his sentence even if he never sets foot in San Francisco or the Tenderloin.

### A.    Section 3553 Factors

#### 1.    *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant is a 31-year-old man who was born in Honduras. He has history of drug possession and illegal reentry crimes. He has been removed at least 3-4 times previously and suffered a 1326 conviction in 2018/19. In short, even though he has not expressly admitted his illegal immigration status, the PSR documents his lack of legal status in this country. An ICE detainer is also in place.

The PSR details Mr. Mr. Diaz-Cruz' background and personal characteristics. It appears the defendant was traumatized by his father's side of the family because they did not like his mother. *See* PSR at Par 47. He was seven years old when they burned down his home where he had been living with his mother and siblings. *Id*. He stopped school at age 9 to try to make money to help his mother and the family. *Id*.

The Defendant admits coming to the United States at age 18, "on top of a train". *See* PSR at par 48. He does not admit to his prior deportations, but the records are indisputable that he was in fact deported several times with his last deportation on May 20, 2022. PSR at par 52.

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

## 2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin Neighborhood and much of the South of Market neighborhood, is in crisis. As the Court is aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl has exacted a crushing human toll in the Tenderloin. Over 800 deaths in 2023, alone.

The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire consequences for the people and families who live and work in the Tenderloin, as well as for San Francisco itself. Pervasive drug dealing in the concentrated neighborhood that is the Tenderloin, especially in the evenings and early morning hours, is a strong contributor to the community's feeling of being under siege, where it does not feel safe to live, go to and from school, work, or play. The effects of the defendant's offense, considered as an individual act, is destructive; the effects of the offense conduct, considered in the aggregate, are catastrophic.

In this case, the defendant was a street level dealer and would not ordinarily have been prosecuted federally as a traditional drug dealer, although had he been arrested and if brought to ICE's attention, would have been deported again. At the time that this case was being prosecuted, the decision point was straight forward: Was this a traditional federal drug case or not? And if not, how can the federal government move as expeditiously as possible to free this community from another drug dealer. If the defendant returns unlawfully to the United States, and/or to the Tenderloin, he will be in violation of the terms and conditions of his supervised release and subject also to additional criminal penalties including those under 8 USC § 1326 for a second and more onerous conviction for illegal reentry into the United States. Because he is pleading to an aggravated felony in this case, a second 1326 conviction will subject him to additional prison time. *See*, e.g.U.S.S.G., §2L1.2(b)(1)(A) and (2)(D) and (3)D) that could lead to an offense level 20.

Federal prosecution efforts also act as a deterrent for other dealers including those who have previously been arrested and then released in state court who return to the Tenderloin to sell fentanyl and other illegal controlled substances. While not being punished this time with a traditional term of

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

imprisonment, an illegal reentry or other violation of the terms of supervised release will be swift and substantially more punitive especially in the case of any further reentry by this defendant at any time into the United States.

**B.      The Necessity of the Proposed Supervised Release Special Conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition.  In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to affect a strict stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicion less search condition, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

//

//

//

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

## IV.    CONCLUSION

The United States respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). The Special and mandatory conditions set forth below should also be made part of the Time Served plus one day sentence.

DATED: July 3, 2024                              Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

    /s/  Jeffrey Bornstein
Jeffrey Bornstein
Assistant United States Attorney

Appendix A

### MANDATORY CONDITIONS

1)    You must not commit another federal, state or local crime.

2)    You must not unlawfully possess a controlled substance.

3)    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

4)    You must cooperate in the collection of DNA as directed by the probation officer.

5)    You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

### STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court, and bring about improvements in your conduct and condition.

1)    You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of RELEASE, unless the probation officer instructs you to report to a different probation office or within a different time frame.

8

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must follow the instructions of the probation officer related to the conditions of supervision.

5) You must answer truthfully the questions asked by your probation officer.

6) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with, for example), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

7) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by these and the special conditions of your supervision that he or she observes in plain view.

8) You must work at least part-time (defined as 20 hours per week) at a lawful type of employment unless excused from doing so by the probation officer for schooling, training, community service or other acceptable activities. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

9) You must not communicate or interact with someone you know is engaged in criminal activity. You must not associate, communicate, or interact with any person you know has been convicted of a felony, unless granted permission to do so by the probation officer.

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA

10) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

If the probation officer determines that you pose a risk to a third party, the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

## SPECIAL CONDITIONS OF SUPERVISION

1) You must cooperate in the collection of DNA as directed by the probation officer.

2) You must submit your person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state or local law enforcement officer at any time with or without suspicion. Failure to submit to such a search may be grounds for revocation; you must warn any residents that the premises may be subject to searches.

3) Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Boulevard, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

GOV. SENTENCING MEMO FOR DIAZ-CRUZ
3:23- NO. 00430-WHA